## HEYER v. KAUFENBERG
(No. 1544; May 28, 1929, 277 Pac. 711)

The cause was submitted for the defendant and appellant on the brief of *A. C. Allen* and *O. N. Gibson* of Riverton.

The cause was submitted by respondent on the brief of *M. C. Burk* of Riverton.

RINER, Justice.

This is a proceeding by direct appeal to review a judgment of the District Court of Fremont County in favor of A. O. Heyer, respondent here and plaintiff below. The appellant Massachusetts Bonding and Insurance Company, hereinafter, for convenience, mentioned as the "Bonding Company," was the only defendant served with process in the District Court and the only party making a defense to the action.

The facts upon which the sole question presented by the briefs of the parties arises, appear to be these: On the 16th and 17th of February, 1927, the respondent Heyer obtained two judgments in his favor in the District Court of Fremont County, Wyoming. One of these judgments was rendered in case No. 4009 for $1,099.95 and costs, and the other in case No. 4010 for $851.65. The judgment defendants in each case were the same, being named as "Wyoming Syndicate, a voluntary association, and C. E. Nelson." On February 17, 1927, in a suit also brought in said District Court by one John Kaufenberg (the named defendant who was not served with process in the instant case) and other persons against C. E. Nelson and others and numbered 4035, an order was entered appointing a receiver of certain property. Thereafter executions were procured by Heyer to be issued upon the two judgments aforesaid. The levies under these executions were made upon some of the property in the possession of the receiver and notices of the sale thereof were published, said sale being advertised to take place on March 1st, 1927. Before the sale was held, however, on the application of the receiver in case No. 4035, a restraining order was issued on March 1, 1927 by the District Court Commissioner, enjoining the sheriff of Fremont County from further proceeding under the executions aforesaid until the further order of the court, providing the plaintiffs filed a bond in the sum of $500 with specified conditions and procured its approval by the clerk of said court. Pursuant to this order, a bond was filed and

approved by the clerk, signed by the Bonding Company and the attorney for the plaintiffs, the condition of the obligation being that the plaintiffs, as principals, and the Bonding Company, as surety, undertook to A. O. Heyer, execution creditor in cases Nos. 4009 and 4010 already mentioned, in the sum of $500, that "said plaintiffs shall pay to him all damages which he may sustain if it be finally decided that the injunction ought not to have been granted."

Thereafter a motion to dissolve the restraining order was filed by Heyer, but before it could be argued, the cause was removed to the United States District Court for the District of Wyoming. Subsequently, after the motion to dissolve had been heard, the Federal Court, on August 3, 1927, by order duly made, dissolved the restraining order aforesaid.

On August 23, 1927, Heyer assigned to one John R. Slaby all the former's "right, title and interest" in the two judgments rendered as above stated, "without recourse," except as to Heyer's good faith to sell and transfer the same. October 14, 1927, Heyer brought this action upon the injunction bond given to secure the restraining order as already recited, to recover damages alleged to have been sustained by him in procuring the dissolution of that order. These damages, as claimed, consisted of the expenses and attorney's fees incurred by Heyer in obtaining that result. The Bonding Company disclaimed liability, setting up the defense that Heyer could not maintain an action upon the bond, as he no longer had any interest therein, because of his assignments of the judgments to Slaby.

The case was tried to the court without a jury. Other than the assignments by Heyer to Slaby, the Bonding Company introduced no evidence. The court found generally in favor of Heyer and against the Bonding Company and made special findings to the effect that the latter executed and delivered the injunction bond in suit, that it "did not pass by assignment of the judgments which were restrain-

ed;" and that plaintiff was entitled to recover his damages for counsel fees and expense in securing the dissolution of the restraining order. Upon these findings judgment was accordingly entered against the surety for the sum of $300 and costs.

Though the assignments do not by their terms refer in any way to the injunction bond or the rights accruing thereunder to Heyer by reason of the dissolution of the restraining order, it is contended for the Bonding Company that by executing and delivering these instruments to Slaby, Heyer divested himself of any right to sue on the bond. Our attention is directed to 2 R. C. L. 633, 634, where it is said:

"The assignment of a debt ordinarily carries with it all liens, and every remedy or security that could have been used, or made available, by the assignor as a means of indemnity or payment, although they are not specifically named in the instrument of assignment, and although the assignment is not by any instrument in writing. In the absence of any provision to the contrary, the unqualified assignment of a chose in action vests in the assignee an equitable title to all such securities and rights as are incidental to the subject matter of the assignment; and he may enforce them although the assignee at the time was ignorant of their existence."

However, immediately following this language the same text proceeds to say:

"To pass as an incident of an assignment, the right must be more than a mere collateral right of action, such as that which may exist in behalf of the assignor against a public officer for failing to discharge an official duty where his misconduct affected the value of the chose assigned."

34 C. J. 650, 651, and 5 C. J. 949, are also cited and are substantially to the same effect as the quotation first above made from Ruling Case Law. The only cases referred to in the brief of appellant are: Schlieman v. Bowlin, 36

Minn. 198, 30 N. W. 879, which held that the assignment of a judgment against a defendant in a replevin suit operated as an assignment of a bond given by him to obtain a return of the property, the court saying in the course of its discussion of the matter: "The right to collect the judgment on execution and the right to recover on the bond which is merely security for the judgment, cannot exist in the hands of different persons:" and Meyer v. Jones, 32 Cal. App. 378, 163 Pac. 67, which decided that sureties on an undertaking for the release of an attachment, a judgment in the action having been assigned to the plaintiff without mention being made of a transfer of any right or benefit of the undertaking, were liable to the plaintiff thereon, and concluding its review of the point the court said:

"The contract of the sureties cannot be regarded as giving the assignee a collateral right of action. It was given as security for the debt, which was the foundation of the original action, and it was an incident of the judgment."

Many other cases of similar purport appear in the books. In Bolen v. Crosby, 49 N. Y. 183, where the court was considering what was transferred by the assignment of a judgment, it was said:

"The assignment of the judgment carried with it the claim and debt upon which it was founded, and all claims against others as collateral and incidental to it. By whatever terms the assignment was made, the debt, as the principal thing, passed, and, with it, all rights and remedies for its recovery and collection."

And In Re Baldwin's Estate, 4 Pa. St. 248, in passing upon the same point, used this language:

"The assignment or transfer of the debt or judgment carries with it all the securities, incidents and guaranties of the debt or judgment."

An examination of the authorities dealing with the question shows that they almost invariably declare that rights "incident" to a judgment will pass when the judgment is assigned whether such rights are mentioned or not. In Commonwealth, use of Vicars v. Wampler, 104 Va. 337, 51 S. E. 737, 1 L R. A. (N. S.) 149, 113 Am. St. Rep. 1039, 7 Ann. Cas. 422, the court, after quoting his text, adopted Bouvier's definition of the term "incident," saying:

"It will be seen from the foregoing definition and illustrations, that the distinguishing characteristic of an incident consists in the fact that it 'usually or naturally and inseparably depends upon, appertains to, or follows' its principal."

The case last mentioned was one where it was held that the assignment of the judgment did not carry with it a right of action against an officer and the sureties on his bond for failure prior to the assignment properly to return a forthcoming bond taken on the judgment. It was further remarked by the court, in language in some respects pertinent, as we think, to the case at bar:

"The distinction as to what does and what does not pass by incidental assignment is, in some instances, nice and difficult to draw; but, in order for it to pass, the incident must, in a legal sense, constitute a security for the debt, and that can hardly be predicated of a mere collateral right of action against a public officer for a *quasi tort* in failing to discharge an official duty although his misconduct may affect the value of the judgment."

While on the other hand it was ruled, in Citizens National Bank v. Loomis, 100 Iowa 266, 69 N. W. 443, 62 Am. St. Rep. 571, that the right of a judgment creditor, in attachment to recover damages against a sheriff for negligently allowing the property attached to be disposed of, passes to the assignee of the judgment, yet the reasoning employed in the case is declared by the opinion in the Wampler decision, supra, to be "unsatisfactory."

In Redmond v. Staton, 116 N. Car. 140, 21 S. E. 186, the decision was that the simple assignment of a judgment did not carry with it a right of action, that the judgment plaintiff had against a clerk of the court who had failed to index it so as to preserve its lien upon the property of the judgment defendant, the opinion in the case citing Timberlake v. Powell, 99 N. Car. 233, 5 S. E. 410, as an analogous authority, wherein the following language was used:

"The present suit is not upon the judgment but upon an alleged independent liability incurred by other tortfeasors * * *. This cause of action is separate and distinct from that involved in a former adjudication and is outside the scope of the assignment."

Likewise in Commonwealth v. Fuqua, 3 Litt. (Ky.) 41, it was held that by the assignment of a judgment, the right which the plaintiff at law had to recover against the sheriff for a neglect or violation of his duty before the assignment, regarding executions which had issued on the judgment, did not pass to the assignee, nor was it extinguished by the assignment. See also Robinson v. Towns, 30 Ga. 818, where, in an action on a sheriff's bond, it was decided that the assignment of a judgment did not pass any interest in the money which the sheriff had previously collected on the judgment, but only conveyed away the plaintiff's interest in the further enforcement of it.

The case of Burgett v. Paxton, 15 Ill. App. 379, presents a somewhat similar state of facts to those existing in the case at bar. There appellants filed a bill to enjoin the sheriff and a judgment creditor from selling certain land under execution against one Willets, and gave them a bond conditioned to prosecute the injunction suit and "pay all costs and damages that may arise in said case or grow out of the same in any manner whatever." The judgment creditor, Bernard, then assigned his judgment against Willets, and the assignee of the judgment was, at his own request, made a co-defendant with the sheriff and Bernard. But no new

bond was given. The injunction being dissolved and the bill therefor dismissed, the sheriff and Bernard brought action on the bond "for themselves and for the use of" the assignee of the judgment. It was formally agreed that neither the sheriff nor Bernard had sustained any damages, inasmuch as the assignee alone had assumed the entire defense in the injunction suit, taking care of the solicitor's fees and costs therein. It was held that the penalty of the bond was limited to the damages sustained by the obligees thereon, and the assignee of the judgment, not being named or referred to in said bond, no recovery could be had for any damages sustained by him.

Another case to the same effect is Tete v. Cantrelle, et al., 6 La. Ann. 271. The facts were there, that Cantrelle obtained a judgment against Tete, and having issued execution upon it, the defendant enjoined the sheriff from proceeding in the execution because he seized property other than that pointed out to him by the defendant. Thereafter the injunction was dissolved and the plaintiff in the injunction and his surety Tete, the plaintiff in the reported case, were, by judgment, condemned to pay ten per cent interest on the amount of the judgment from the date on which the injunction was obtained and twenty per cent damages and costs. Thereafter Cantrelle, in consideration of the payment to him by the Ocean Insurance Company of the face of his judgment and interest, transferred that judgment to the latter "with all the rights of mortgage and other rights resulting from the judgment and its registry." No appeal having been prosecuted from the judgment dissolving the injunction and allowing damages and interest, Cantrelle issued execution on it. This execution was enjoined by Tete, the surety on the injunction bond, on the ground that the damages and interest had been transferred by Cantrelle to the Ocean Insurance Company. It was not claimed that the damages and interest were expressly transferred, but it was contended that they were accessories to the original judgment and that by its transfer they necessarily followed.

Reversing the action of the trial court in granting the injunction restraining the enforcement of the judgment for damages and costs, the Appellate Court said:

"The damages allowed on the dissolution of an injunction are given by law to indemnify the defendant in the injunction for his trouble in defending the suit, the vexation it occasions him and the expenses he incurs for counsel fees or otherwise.

"These damages are not accessory to the original judgment. They do not grow out of it. They are given in a separate suit and by a separate judgment. * * * The transfer of the original judgment is not a transfer of the judgment for damages, nor does it afford any presumption that the damages are transferred with it, because they are not necessarily connected with or dependent upon it. The judgment for damages belongs to the party who has suffered the damages, by incurring the expense and undergoing the trouble and vexation of defending an unfounded injunction suit."

In 2 Freeman on Judgments (5th Ed.) 2209, the text, after mentioning the rule that the assignment of a judgment "carries with it the right to enforce the judgment by resort to every legal or equitable remedy available to the assignor," remarks:

"But independent and mere personal rights of the assignor, which are not incident to his status as judgment plaintiff, do not pass by an assignment, unless expressly provided for."

The case note in 1 L. R. A. (N. S.) 149, appended to the Wampler case, supra, is introduced by the statement that:

"Without exception, none of the authorities sustain the right of the assignee to a litigious claim against a third party for damages arising before the assignment, as an incident to the assignment of the judgment. In general, the only incident which passes is some security for the debt, and not a collateral right of action."

Possibly in making this statement, some few exceptions were overlooked by the author of the note, but we are inclined to think it is generally true, according to the weight of authority.

In the case at bar we are unable to see that the right to damages under the injunction bond, which vested in the respondent Heyer upon the dissolution of the restraining order, passed to Slaby when Heyer subsequently assigned the judgments to him. Heyer and no one else bore the expense necessary to procure the dissolution of the order which prevented any attempt being made to obtain a satisfaction of his judgments. When he later transferred the judgments to Slaby, it is not reasonable to think that he intended to transfer also his right to reimbursement for his outlay in removing a legal obstacle to his ownership of enforceable judgments. The instruments of transfer disclose no such intention. The rights accruing to Heyer under the bond were in no sense "naturally and inseparably" dependent upon the judgments and hence were not incident to them. Neither were such rights in any way a security, held by the assignor, for the payment of the judgments, nor did they furnish any remedy to accomplish their collection. The assignee was not named as the obligee of the bond, and the surety thereon could well object that it was bound to no one else. The rights under the bond were purely personal to Heyer. He alone had the authority to enforce them, and his subsequent assignments of the several judgments in no way abridged those rights.

Believing as we do that the trial court's conclusion upon the record under review was correct, the judgment is accordingly affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.